## Gaertner v. Kraft.

(Decided May 18, 1915.)

Appeal from Jefferson Circuit Court
(Chancery Branch, No. 1).

Bills and Notes—Action Against Endorser—Evidence.—In an action against appellee as endorser of certain promissory notes, where the defense interposed was that by fraud or mistake the words "without recourse" were omitted from the endorsement, the evidence examined and held that appellant was an innocent holder

for value, and had a right to rely upon the open endorsement of appellee.

BURWELL K. MARSHALL for appellant.

EDWARD G. KLEMM for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

The appellant was the plaintiff below and brought this suit in equity against Mrs. Cordelia W. Hampton to enforce a purchase money lien, and against the appellee, Kraft, to recover a personal judgment against him as endorser on the three lien notes of $1,500 each. The notes were executed to Kraft by Cordelia W. Hampton. Kraft by open endorsement transferred them to A. L. Butler, and Butler transferred them to appellant without recourse. Kraft resisted payment of the notes on the plea that his endorsement was procured by fraud and misrepresentation, and that by mistake the words "without recourse" were omitted therefrom.

Cordelia W. Hampton, the payor, was the wife of George W. Hampton, a real estate agent. The notes were the result of certain real estate transactions in which George W. Hampton represented A. L. Butler, and W. H. Pipes, another real estate agent, represented Kraft. Kraft owned a piece of property on the east side of Second street, between Walnut and Chestnut, in Louisville, and which will be referred to hereafter as the Second street property. The Louisville Title Company held a $4,000 mortgage on it. Kraft desired to purchase the Aloha apartment house in Kensington Court, and which was owned by Butler. The Kentucky Title Company held a mortgage on this property for $16,750. On November 25th, 1913, through Hampton, Butler's agent, Kraft made a written proposal to exchange his Second street property for the apartment house. The Second street property was valued at $8,500 and the apartment at $30,000, but the exchanges were to be subject to the existing mortgages, and the Krafts were to give Butler a second mortgage on the apartment for the excess, $13,250. Butler wrote an acceptance of this proposal. Butler did not care to purchase the Second street property, but agreed to it with the understanding that Hampton procure a purchaser, or take it off of Butler's hands. Kraft, however, was not a party to this agreement and knew nothing of it. Hampton then

started negotiations between Butler and the appellant, Gaertner. Neither was Kraft a party to these negotiations. Gaertner owned a corner lot at First and Jefferson streets. During the next four days several written propositions and counter-propositions passed between Butler and Gaertner through the instrumentality of Hampton, as agent for Butler, with the result that on the 29th of November Gaertner agreed to accept the Second street property, subject to the $4,000 mortgage, and Butler's notes for $49,000 in payment for his property at First and Jefferson streets. Gaertner, Butler and Hampton testified, however, that Gaertner did not want the Second street property and would not agree to take it unless a purchaser be secured. Hampton agreed to take the property off of his hands at $8,500—the title to be in Mrs. Hampton, and she was to assume the $4,000 mortgage and execute notes for $4,500 as a second lien. In this connection, it may be said, that Kraft disputes Gaertner's contention that he only agreed to make the trade upon condition that Hampton and Butler would find a purchaser for the Second street property. The only evidence in support of Kraft on this proposition, even if material, is the statement made by Gaertner in his written negotiations with Butler that, ''I will accept the house and lot  *  *  *  on the east side of Second street, etc.'' This, however, does not contradict the testimony that Gaertner, as a condition to his acceptance of the Second street property, required Hampton and Butler to find a purchaser for it.

In order to obviate the trouble and expense of preparing and recording three transfers of the Second street property, viz., from Kraft to Butler, from Butler to Gaertner, and from Gaertner to Hampton, Gaertner suggested the plan of having Kraft convey it directly to Mrs. Hampton. To this end, he prepared a deed which provided that Mrs. Hampton should assume payment of the $4,000 mortgage to the Kentucky Title Company, and also execute, as a second lien, the $4,500 notes to Kraft. His plan, of course, was then to have Kraft and Butler endorse the notes to him. As a matter of precaution he made inquiry at the bank where Kraft usually did business, and received a favorable report as to his solvency and integrity. This deed which Gaertner had prepared was carried to Pipes, Kraft's real estate agent, and Neuman,

his attorney whom he had employed to abstract the Aloha apartment title. The deed was then rewritten by Neuman with some minor changes, but the provision for execution of the notes by Mrs. Hampton to Kraft was left just as Gaertner had prepared it. Prior to the preparation of this deed Pipes was consulted by Gaertner or Butler as to whether it would be satisfactory to Kraft to have the Second street property conveyed directly to Mrs. Hampton, and he said there would be no objection. Pipes, however, says that he consented under the impression that the manner of conveyance was solely for convenience, and to obviate the necessity of intermediate deeds.

With reference to his attorney, Mr. Kraft testifies that he was employed to "look after our interests, to examine the title and see that everything was got off in a straightforward manner; we didn't want any hereafter business about it." On the morning of December 5th all the people interested, except Gaertner, met at the office of another attorney to close the deals. Kraft was there with his attorney and his real estate agent. Butler was there with an attorney. Hampton was present and the two Title companies had attorneys present to look after their interests as mortgagees. There is no evidence to show that prior to this meeting Kraft had consented to, or had any personal knowledge of the trades between Butler, Gaertner and Hampton. But he did then, as a matter of accommodation and to save a multiplicity of conveyances, execute the deed for his property direct to Mrs. Hampton, as he says, "to cut out these inner deeds." He testifies, "I signed up as they told me, and they were getting ready to go, and they said, 'Here, you have to endorse these notes,' and I said, 'How is that, that I should sign these notes,' and they said, 'To pass the title,' and so in signing them, instead of signing them without recourse, I just practically put my name to them and never thought a thing about it until a year ago, a year afterwards, when I got notice that my interest was due on these notes, or the notes were due." He was then asked of whom he made inquiry and who told him to sign the notes, and he replied, "Mr. Neuman, our attorney; I said, 'Why should I endorse those notes,' and he said, 'For the sole purpose of passing the deeds. * * * I was told by our attorney, Mr. Neuman, to do it for the intention of pass-

ing title—that is what they told me." Mr. Kraft re-iterates time and again that he endorsed the notes "for the sole purpose of passing title."

The attorney, Mr. Neuman, testifies that he remembers Mr. Kraft asking him whether or not he should endorse the notes, and, "I advised him—I said it is only for the purpose of conveying title to these notes—that is only part of the endorsement. I might say that the endorsement should have been without recourse, but it was merely done in the haste of affairs; it was more of an oversight than anything else, in not having them endorsed without recourse, as I say because of the general hurry and flurry at that time, and the Aloha title being involved so much, and I had to see that that was properly straightened out  *  *  *  all in a hurry just naturally caused the oversight."

Butler endorsed them without recourse and Gaertner accepted them on Butler's $49,000 payment for the First and Jefferson property. When the notes became due, Mrs. Hampton failed to pay, and Gaertner sought to enforce his lien on the property and recover personal judgment against Kraft as endorser. Gaertner claimed that he was an innocent holder for value, but the lower court held that he was not, and dismissed the petition as to Kraft on the idea that the words "without recourse" were omitted by mistake, and that Gaertner fraudulently procured Kraft's endorsement.

We have reached the conclusion that the lower court erred in this judgment. Even if Gaertner had been present at the time the deals were closed, it would require evidence that the omission of the words "without recourse" was by mutual mistake or oversight of the parties. There is no evidence of a mistake on the part of any one except Kraft and his representatives, and their mistake was not the kind that relieves against a contract. They do not claim an agreement that the endorsement was to be without recourse. No doubt Kraft and his representatives were mistaken as to the legal effect of an open endorsement, if in fact they gave it any consideration, but it was their mistake—not a mutual mistake. The others, no doubt, were wiser. Gaertner was beyond a doubt, but there is not the slightest evidence that he, or any of those present said or did anything whereby Kraft could have been deceived or misled. We think it is clearly established that Kraft would not have

made an open endorsement had he understood the effect of it and that he made a mistake in doing so. He was only concerned in selling the Second street property and in acquiring the Aloha apartment, and transferred the Second street property direct to Mrs. Hampton, and endorsed her notes in order to accommodate. But an accommodation endorser is none the less liable. There is no claim of fraud in any of the real estate transfers and he is not seeking to evade or reform them. Appellee admits, of course, that his plea of fraud and mistake in the endorsement of the notes cannot avail against an innocent holder for value. But he contends that Gaertner is not an innocent holder and charges that he was not only a party to, but the instigator of a fraud whereby a liability was imposed upon the appellee which he never thought of contracting. The proof does show abundantly that Gaertner was careful and able to look after his interests, but that does not mean dishonesty or bad faith. While he was not present or represented at the meeting when the deeds were closed, yet he knew that as a result of that meeting he was to take over the Hampton notes which were to be endorsed by Kraft, and, as he says, were to be endorsed "without recourse." Upon that condition, he had agreed to transfer his property at First and Jefferson streets. But knowledge of these facts does not evidence notice of infirmity in the endorsement. Appellee argues that Gaertner was an experienced real estate dealer and knew all the ins and outs of the trade, and also knew the inexperience of Kraft, and, with that as a working basis, prepared in advance the notes and short-cut deed. But Kraft signed them deliberately and advisedly. If the advice was poor Gaertner was not blameable. It may have been, and no doubt was, the result of Gaertner's plan, and in compliance with his stipulation, but that does not impute fraud to him. Neither is fraud to be inferred from the fact that he prepared the papers in advance. He had them placed in the hands of Kraft's attorney and real estate agent, and they had ample time to examine them, and Kraft's attorney rewrote the deed. This was notice of his plan instead of evidence of a plan to defraud. Gaertner had a right to stipulate the terms and conditions in the trade he was making. He had a right to require a purchaser for the Second street property before he would convey his at First and Jefferson. Kraft, of

course, had an equal right to decline to become a party to these transactions. He could have written "without recourse" as easily as he wrote his signature on the notes. But he chose his course and fixed his liability.

It is not necessary to further consider appellee's argument that the endorsement was made without consideration. As already stated, such a plea cannot avail Kraft against an innocent holder of the note. These notes came to Gaertner in consideration of his transfer of the property at First and Jefferson. They bore Kraft's open endorsement. Gaertner testifies, and there is no proof to the contrary, that he would not have accepted them if Kraft had endorsed them "without recourse." There is no proof that Kraft endorsed the notes with even a mental reservation, or that he ever intended to insert the words "without recourse." The only representations made to Kraft at the time came from his attorney. There is no question about the good faith of the attorney, nor did he in fact make any misrepresentation. He said to Kraft that his endorsement was necessary in order to transfer the title—title to the notes. This was true, and the endorsement had that effect. He could, of course, have added words of limitation to his endorsement, and had he known then what he knows now, he, no doubt, would have endorsed "without recourse," but there is no reason for charging his ignorance to Gaertner. Gaertner did nothing to deceive or mislead him. For a valuable consideration he accepted the notes as endorsed by Kraft. There is no proof of notice to him of any defect or infirmity. He had a right to rely upon the endorsement as made. For the reasons stated, the judgment of the lower court is reversed, with directions to proceed in conformity herewith.